# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2495

_____

| | | |
|---|---|---|
| Douglas J. Buckles, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| First Data Resources, Inc., | * | |
| a Nebraska Corporation, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 24, 1999

Filed:  June 2, 1999

_____

Before MCMILLIAN, FAGG, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

First Data Resources, Inc., (First Data) appeals the denial of its motion for judgment as a matter of law following a jury verdict in favor of former employee Douglas J. Buckles.  Buckles, who has sinusitis, was fired from his job and alleges his termination violates the Americans with Disabilities Act (ADA). 42 U.S.C. §§ 12101-12213.  First Data argues, *inter alia*, that Buckles was not qualified to perform the essential functions of his job since he was excessively absent, and further, that he did not advance a reasonable accommodation.  We agree and reverse.

## I.    BACKGROUND

In 1982, Douglas Buckles began working for First Data Resources as an authorizations agent.  Authorizations agents verify credit card charges over the phone by entering specific information into a computer.  Some time between 1986 and 1988, Buckles was diagnosed with acute recurrent rhinosinusitis.  This condition, when manifested, could create a burning sensation, swelling in the face, wheezing or tightness in the chest, concentration problems, and eyes that watered and sometimes turned red.  Buckles' sinus attacks were triggered by irritants such as heavy perfumes, smoke, nail polish, glue, tar, and various adhesives.  In response to Buckles' condition, First Data created a work station for him in a room with better ventilation, and issued a memorandum prohibiting the use of nail polish in his department.

Throughout the course of his employment, Buckles' performance was generally satisfactory but he consistently struggled with his attendance.  Like many employers, First Data maintains an attendance policy.  First Data's policy allocates hours into three pools: pool A for vacation hours; pool B for sick leave; and pool C for additional sick leave.  When an employee uses pool C hours after exhausting pools A and B, automatic corrective or disciplinary action is triggered.

On June 21, 1994, Buckles' anniversary of employment, his allotted hours for each pool were replenished.  By August 3, Buckles had exhausted his pool A and B hours and used pool C hours.  He received no disciplinary action for exceeding pool B hours, but instead his supervisors met with him and created a procedure to deal with any problems associated with his sinus condition.  The procedure established that if he perceived or believed he would be exposed to irritants, he could sign off his phone, tell a supervisor of the potential problem, and vacate the area while an investigation ensued and a remedy was pursued.

Buckles continued to have attendance problems, however, resulting in three notices for corrective action. When Buckles thought he would be exposed to potential irritants, he went home. After leaving work again on September 20, Buckles was finally suspended and terminated on October 2, 1994. Buckles then brought this suit alleging violation of the ADA. The jury found in favor of Buckles and the district court entered judgment in the amount of $98,998.56 for back pay, front pay, attorney's fees, costs, and general compensatory damages. First Data brings this appeal following denial of its motion for judgment as a matter of law.

## II.   DISCUSSION

We review de novo the denial of a motion for judgment as a matter of law. See Gray v. Bicknell, 86 F.3d 1472, 1478 (8th Cir. 1996). Judgment as a matter of law is appropriate if there is insufficient evidence to support the jury verdict. Id. The evidence is insufficient if "no reasonable juror could have returned a verdict for the non-moving party"–Buckles. Morse v. Southern Union Co., No. 98-2050, 1999 WL 212844, at *2 (8th Cir. Apr. 14, 1999) (sources omitted). In making this determination, we view all facts and resolve any conflicts in favor of Buckles, giving him the benefit of all reasonable inferences. See Varner v. National Super Markets, Inc., 94 F.3d 1209, 1212 (8th Cir. 1996).

For claims under the ADA, we utilize the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 445 (8th Cir. 1998). Under McDonnell Douglas, Buckles must first establish a prima facie case of discrimination by showing "that [he] is disabled within the meaning of the [ADA]; [that he] is qualified to perform the essential functions of [his] job with or without reasonable accommodation; and [that he] suffered an adverse employment action because of [his] disability." Webb v. Mercy Hosp., 102 F.3d 958, 959-60 (8th Cir. 1996). First Data argues that Buckles is not

disabled within the meaning of the ADA and is not qualified to perform the essential functions of his job with or without reasonable accommodation.

We focus our attention on Buckles' burden to establish that he is qualified to perform the essential functions of his job with or without reasonable accommodation.[1] First Data contends that Buckles is not qualified because of his excessive absences. In the context of the ADA, we have recognized that "regular and reliable attendance is a necessary element of most jobs." Nesser, 160 F.3d at 445. First Data is no exception and considers attendance to be an "essential function," as illustrated by the detailed attendance policies and procedures. Buckles, an hourly employee, disputes that attendance is essential to First Data since there are numerous employees and the company accounts for possible absences. We are not persuaded by such a conclusory argument,[2] which runs contrary to the express policies and procedures of First Data.

On June 21, 1994, Buckles' allotted vacation and sick leave time was replenished. In the short space of the six weeks that followed, he exhausted his entire year's worth of vacation and permitted sick leave time. Over the next two months, Buckles continued to have numerous absences and was finally terminated on October 2, 1994. Because of Buckles' frequent absences, he was unable to meet an essential function of his employment.

Buckles, nevertheless, argues that he is qualified to perform the essential functions of his employment–namely regular and reliable attendance–with a reasonable

---

[1]We do not reach the question of whether Buckles is disabled within the meaning of the ADA.

[2]Buckles urges that under Carlson v. Inacom Corp., 885 F. Supp. 1314, 1321 (D. Neb. 1995), First Data must additionally show a specific financial impact resulting from the absences. The showing of a financial burden relates to the rebutting of a requested reasonable accommodation. See DeBord v. Board of Educ., 126 F.3d 1102, 1106 (8th Cir. 1997).

accommodation. Significantly, prior to his termination First Data made great efforts to accommodate Buckles. First Data issued a memorandum to employees prohibiting use of nail polish in Buckles' department. First Data also moved Buckles from the department he was in and created a work station in another room with better ventilation. Finally, a system was arranged for Buckles whereby if he was sensing an irritant he could sign off his phone, notify his supervisor, and wait until the problem was remedied.

Buckles contends that First Data's accommodation was not reasonable because it did not provide for "avoidance" of irritants in the workplace. In this situation, there is only so much avoidance that can be done before an employer would essentially be providing a bubble for an employee to work in. Even assuming Buckles is disabled within the meaning of the ADA, we think that First Data's accommodations in this regard were reasonable because they sought to avoid exposure, and in the event of possible exposure to an irritant, Buckles could "exit the area." Instead of exiting the area, however, Buckles went home when he thought he would be exposed to an irritant. Unfettered ability to leave work at any time is certainly not a reasonable accommodation here. Additionally, Buckles argues that First Data's accommodation was not in writing. However, an accommodation need not be in writing to be reasonable.

Although the adjustments made by First Data proved unsuccessful, the burden remains with Buckles. He must show that a reasonable accommodation, allowing him to perform the essential functions of his job, is possible. See Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 788 (8th Cir. 1998). The accommodation Buckles advances is "an irritant-free work environment" and "additional unpaid sick time." There is no precise test for what constitutes a reasonable accommodation, but an accommodation is unreasonable if it "either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program." DeBord v. Board of Educ., 126 F.3d 1102, 1106 (8th Cir. 1997).

-5-

The accommodation sought by Buckles would impose an undue financial and administrative burden on First Data. An employer is not required by the ADA to create a wholly isolated work space for an employee that is free from numerous possible irritants, and to provide an unlimited absentee policy. While the ADA notes examples of reasonable accommodations, including restructuring of a job and providing part-time or modified work schedules, see 42 U.S.C. § 12111(9)(B), these are limited by the reasonableness requirement. As noted, First Data reasonably attempted to alter the work environment and procedures to reduce Buckles' absences. This effort was unsuccessful, and Buckles continued to have numerous and unpredictable absences. Cf. Jackson v. Veterans Admin., 22 F.3d 277, 279 (11th Cir. 1994) (stating there was no reasonable accommodation for "numerous unpredictable absences" within the first few months of temporary employment).

Because Buckles failed to advance a reasonable accommodation, he has not met his initial burden to show that he is a qualified individual under the ADA. Therefore, he "has not established a prima facie case of disability discrimination." Moritz, 147 F.3d at 788. Consequently, there is not sufficient evidence to support the jury verdict and First Data is entitled to judgment as a matter of law.

## III.  CONCLUSION

For the foregoing reasons we reverse the denial of judgment as a matter of law and remand for entry of judgment in favor of First Data.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-