# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1693

_____

Minnie Hatchett,             *
                       *
        Appellant.   *   Appeal from the United States
                       *   District Court for the Eastern
      v.            *   District of Arkansas
                       *
Philander Smith College, et al.,  *
                       *
        Appellee.    *

_____

Submitted:  February 14, 2001

Filed:  June 1, 2001

_____

Before LOKEN, BYE, Circuit Judges, and STROM,[*] District Judge.

_____

STROM, District Judge.

Minnie Hatchett ("Hatchett") appeals from the district court's grant of summary judgment in favor of Philander Smith College ("College") and Dr. Myer L. Titus, president of the College, and the district court's denial of her motion to alter or amend the judgment. We affirm.[1]

_____

[*] The Honorable Lyle E. Strom, Senior Judge, District of Nebraska, sitting by designation.

[1] The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas, Western Division.

## Background

Hatchett was employed as the Business Manager for the College. In 1995, College President Myer L. Titus (Titus) decided to restructure the College's administrative staff. The Business Manager position would eventually be replaced with a Dean of Administrative Services. The College first advertised the Dean of Administrative Services position in 1995. Hatchett submitted an application in April of 1995 but was not awarded the position. The Dean position was left vacant. Hatchett continued performing the Business Manager duties.

On January 8, 1996, Hatchett was injured while on College business in Washington, D.C. A skylight at the Sheraton Hotel broke, and Hatchett was struck in the head by falling debris. Following the accident she was confused and disorientated. Hatchett was taken to a hospital, treated, and released. Hatchett visited several doctors following her accident. She was initially under the care of Dr. Thomas Snider, a Neurologist. Dr. Snider retired, and Hatchett was referred to Dr. Reginald Rutherford, also a Neurologist. In March of 1996, Hatchett began treatment with Dr. Judy White Johnson, a Psychologist.

Following the accident, Hatchett tried working. She could perform routine work tasks such as answering phones, signing checks, and processing mail. She could not, however, continue working as planned. In a letter to the College she stated her treating physician requested bed rest and indicated it would be six months to a year before she would be released for work. On February 8, 1996, College President Myer L. Titus informed Hatchett that she could not be treated differently from other employees. Titus

told Hatchett she must go on full-time leave. Hatchett, however, wanted to continue working. She did not come in to work after this, but claims she continued working at home and alleges she was contacted by the College regarding work-related matters. According to an October 1, 1996, letter from Dr. Johnson to UNUM Life Insurance Co. of America, Hatchett was previously scheduled to return to work on that day on a part-time schedule of four hours per day. However, the letter states that setbacks and added pressure interfered with Hatchett's steady recovery, and she was still unable to perform some of the functions of the Business Manager position. In addition, Hatchett stated in her complaint that she planned to return to work part-time in October.

Hatchett met with Dr. Titus on September 27, 1996. At this meeting, Titus informed Hatchett that the Business Manager position no longer existed. Titus offered her a choice of three part-time positions: Director of Office of Sponsored Programs, Director of Human Development, or Associate Director of Development. These positions would require Hatchett to return to work part-time on January 15, 1997, and would pay half of her salary at the time she took leave. Hatchett declined these positions. Her doctors advised her not to accept one of the three alternate positions. In a letter dated December 6, 1996, Titus again notified Hatchett that the Business Manager functions no longer existed. He again invited her to choose one of the three part-time positions.

On November 22, 1996, the College again advertised the Dean of Administrative Services position. Hatchett submitted her application for Dean of Administrative Services on December 18, 1996. She was interviewed for, but not offered, the Dean vacancy. The position was awarded to Mr. Bryant, an individual who worked for and

was trained by Ms. Hatchett during her tenure as Business Manager. In their brief, the College and Titus state Hatchett was considered terminated in May of 1997 when she was not hired as Dean of Administrative Services and had previously refused their offers of alternative employment.

On December 18, 1997, Hatchett filed a complaint alleging violations of the Family Medical Leave Act (FMLA), Americans with Disabilities Act (ADA), Age Discrimination in Employment Act (ADEA), and Title VII of the Civil Rights Act, as well as state law claims. On January 26, 2000, the district court granted the defendants' motions for summary judgment. Hatchett responded with a motion to alter or amend the order granting defendants' motion for summary judgment. On February 16, 2000, the district court denied the motion to alter or amend. Hatchett is appealing the order granting defendants' motions for summary judgment and the denial of her motion to alter or amend.[2]

### Discussion

We review a district court's grant of summary judgment *de novo*. Reynolds v. Phillips & Temro Industries, Inc., 195 F.3d 411, 413 (8th Cir. 1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In addition, we may affirm a judgment on any grounds supported by the record. Land v. Washington County, Minnesota, 243 F.3d 1093, 1095-96 (8th Cir. 2001). Based upon the undisputed material facts and applicable law, we find that the district court properly granted summary judgment in favor of the College and Titus.

---

[2] Hatchett does not appeal the dismissal of her ADEA, Title VII or state law claims.

I.    Americans with Disabilities Act Claims.

We have previously held that to survive summary judgment at the district court level, a plaintiff must establish each element of his or her prima facie case. Land v. Washington County, Minnesota, 243 F.3d 1093, 1095 (8th Cir. 2001). Under the ADA, a plaintiff must demonstrate that he or she: "(1) is disabled within the meaning of the ADA; (2) is qualified (with or without reasonable accommodation) to perform the essential functions of the job at issue; and (3) has suffered adverse employment action under circumstances giving rise to an inference of discrimination." Land, 243 F.3d at 1095. The district court found that Hatchett was not "qualified" within the meaning of the ADA, reasoning that Hatchett could only perform the job on a part-time basis. Alternatively, the district court found that her claim was barred by the statute of limitations.

The determination of whether a person is "qualified" under the ADA is a two-fold inquiry: first, the court must determine whether the individual meets the necessary prerequisites for the job, such as education, experience, and training; second, the court must determine whether the individual can perform the essential job functions, with or without reasonable accommodation. Id. (citing Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000)). The parties agree that the time to evaluate Hatchett's abilities is September of 1996, when she was told that the Business Manager position was no longer in existence and she was offered three alternative part-time positions.

Hatchett can establish the first part of the inquiry by virtue of having previously held the position. See e.g. Browning v. Liberty Mutual Ins. Co., 178 F.3d 1043, 1047-48 (8th Cir. 1999) (holding that the first prong of the test was established by virtue of the plaintiff previously holding the position). However, she may not rely upon her past performance to establish that she could perform the essential functions of the job. Browning, 178 F.3d at 1048. Like the employee in Browning, nothing in the record demonstrates that she could perform the essential functions of the job. The essential functions of a job include the "fundamental job duties . . . [but] does not include the marginal functions of the position." Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 787 (8th Cir. 1998). There is no issue of fact as to the essential functions of the Business Manager position.

The job description of Business Manager is lengthy and includes, among other duties, holding monthly meetings and attending seminars. Hatchett also stated in her deposition that she was required to confer with parents and students about unpaid tuition and the impact on the student's ability to sit for finals.

According to a letter written by Hatchett's neuropsychologist dated October 1, 1996, Hatchett at that time still could only work on one-on-one projects that involved a focused subject, were goal-oriented, and were relatively conflict-free. The letter further states that she became confused and emotionally upset when faced with conflict or multiple input. The neuropsychologist recommended that she not confer with students or attend staff meetings and other large group meetings. These are essential aspects of the Business Manager position. Thus, she was not "qualified" and was not

entitled to ADA protection unless she could perform the essential functions with reasonable accommodation.

A reasonable accommodation is one which enables a individual with a disability to perform the essential functions of the position. 29 C.F.R. § 1630.2(o)(1)(i). From the outset, the Court notes that an employee seeking a reasonable accommodation must request such an accommodation.[3] Mole v. Buckhorn Rubber Products, Inc., 165 F.3d 1212, 1217 (8th Cir. 1999). Hatchett alleges that at the time she returned, she requested a part-time schedule or intermittent FMLA leave.[4] A part-time schedule may be reasonable in the appropriate circumstances. 42 U.S.C. § 12111(9). However, an employer is not required to reallocate essential functions that an individual must perform. Moritz, 147 F.3d at 788. Furthermore, an employer is not required to hire additional employees or assign those tasks that the employee could not perform to other employees. Id. The accommodation requested by Hatchett does not enable her to perform the essential functions of the job. Even if allowing Hatchett to work only four hours a day were reasonable, she still is not able to perform the essential functions while at work. There is also some question as to whether the Business Manager's

---

[3] For purposes of this appeal, the Court assumes as true that Hatchett specifically requested accommodations.

[4] Hatchett also claims that she requested a "work-hardening" program as an accommodation. However, a reasonable accommodation allows the employee to perform the essential functions of the job while at work. Hatchett does not demonstrate that the "work-hardening" accommodation would accomplish this purpose. Hatchett also claims that intermittent FMLA leave is *per se* reasonable. Again, this argument fails because Hatchett does not provide any evidence that she could perform the essential functions of the job while at work. Even intermittent FMLA leave does not excuse an employee from the essential functions of the job. In addition, the regulations regarding FMLA clearly state that "the leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the [ADA]." 29 C.F.R. § 825.702(a).

duties could be completed on a part-time schedule, which would make Hatchett's part-time request unreasonable. See e.g. Burnett v. Western Resources, Inc., 929 F.Supp. 1349 (D. Kan. 1996) (holding that plaintiff was not qualified because he was unable to perform the duties of the eight-hour job within his four-hour work restriction). However, because the Court finds that Hatchett is not able to otherwise perform the essential functions while on the job for the proposed four hours, she is not qualified.

In addition, Hatchett has not rebutted this evidence with a showing of her individual capabilities. See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995) (holding that if the employer demonstrates that an employee cannot perform the essential functions of the job with or without accommodation, the burden shifts to the employee to present evidence of individual capabilities). Hatchett claims her individual capabilities are demonstrated by her expected return to work full-time, if the College would have allowed her to work-harden. Employers, however, are not required to predict the employee's degree of success with recovery. Browning, 178 F.3d at 1049. Protection under the ADA based upon an employee's eventual degree of future recovery was not Congress's intent in passing the ADA. Id. Hatchett has not established her prima facie case of disability discrimination under the ADA.

For these same reasons, Hatchett cannot prevail on her failure to hire claim. Hatchett claims that the College's failure to hire her for the Dean of Administrative Services position violates the ADA.[5] In her brief, she admits that the job descriptions

---

[5] Hatchett, in her failure to hire argument, points to the College's failure to hire her in 1995, when the Dean of Administrative Services position was first advertised. This time is prior to the accident for which she now claims disability and is thus irrelevant to our inquiry.

of the two positions are virtually identical. This is fatal to her failure to hire claim. As we have noted, Hatchett is unable to perform the essential job functions of either position with or without reasonable accommodation, and thus is not a "qualified" individual with a disability entitled to ADA protection. Finally, Hatchett's ADA retaliation claim fails because she has not presented any evidence that she was terminated for any reason other than her inability to perform the essential functions of the job with or without reasonable accommodation. See e.g. Sims v. Sauer-Sundstrand, Co., 130 F.3d 341, 343 (8th Cir. 1997) (setting forth the prima facie elements of a retaliation claim).

II.     Family and Medical Leave Act Claims.

The issue before the Court is one which has not been addressed in a reported opinion. Specifically, we must determine whether an employee, who is unable to perform the essential functions of a job, is entitled to intermittent or reduced schedule leave. [6] The district court found that at the end of the twelve week period, Hatchett was unable to perform the essential functions of the job and was not entitled to restoration. On appeal, Hatchett does not specifically challenge the district court's conclusion regarding full-time leave and entitlement to restoration. Rather, Hatchett attacks the district court's failure to address her request for intermittent leave. Hatchett argues that she would have been able to return to work by the time her FMLA leave expired, or within 24 weeks, if the College and Titus would have allowed her to "work-

---

[6] In Reynolds v. Phillips & Temro Industries, Inc., we noted the district court's conclusion that the employee may have been entitled to intermittent leave, but for his inability to perform the job even with reduced hours. Reynolds v. Phillips & Temro Industries, Inc., 195 F.3d 411, 413 n. 2. However, we did not confirm the validity of the district court's assertion.

harden" on a reduced schedule, gradually working up to full-time. We hold that the legislative history of the FMLA and the statute's restoration provisions demonstrate that an employee who could not otherwise perform the essential functions of her job, apart from the inability to work a full-time schedule, is not entitled to intermittent or reduced schedule leave.

The FMLA was enacted in the wake of increasing struggle between work and family life. To help ease the growing tension between work and family, the FMLA establishes a right to unpaid family and medical leave for those employees covered under the Act. S. Rep. 103-3 at p. 4. Specifically, the FMLA entitles an eligible employee to twelve (12) weeks leave for one of the articulated medical conditions, one of which is the employee's own serious medical condition. 29 U.S.C. § 2612(a)(1). In addition to full-time leave, an employee may take intermittent or part-time leave when medically necessary. 29 U.S.C. § 2612(b)(1).

The purpose of the FMLA is to allow an employee to be away from the job, as opposed to using the statute as a means to force an employer to be directly involved in an employee's rehabilitation. For example, an employee's inability to work may be due to a required absence for chemotherapy. While the employee is receiving treatment and is away from his or her job, the employee is unable to perform the functions of his or her job and is entitled to leave under the FMLA. S. Rep. 103-3 at p. 23. However, while the employee is at his or her job, the employee must be able to perform the essential functions of the job. Similarly, the legislative history addresses a situation involving an employee who is recovering from a serious health condition and is able to return to work, but must periodically leave work for continued medical supervision.

In such a situation, the employee is deemed to be temporarily unable to perform the functions of the job when away from work to receive the continued medical supervision, thus entitling that individual to intermittent leave. S. Rep. 103-3 at 23. In short, the legislative history demonstrates that the FMLA protects an employee who must leave work, or reduce his or her work schedule, for medical reasons, as long as that employee can perform the job while at work.

Our conclusion that an employee must be able to perform the essential functions of the job to take intermittent or reduced schedule leave is further supported by an examination of the restoration provisions of the FMLA. Upon return from FMLA leave, an employee is generally entitled to be restored to the position held prior to leave, or one that is equivalent in terms of benefits, pay and other terms and conditions. 29 U.S.C. § 2614(a)(1). However, an employee is not entitled to restoration if, at the end of the FMLA leave period, the employee is still unable to perform an essential function of the job. 29 C.F.R. § 825.214; Reynolds v. Phillips & Temro Industries, Inc., 195 F.3d 411, 414 (8th Cir. 1999). An employee is only entitled upon return from leave to that which she would have been entitled absent the leave time. S.Rep. 103-3 at p. 3. Allowing Hatchett to stay in a position she cannot perform gives her more than if she had not taken leave.

Based upon the undisputed facts, Hatchett was unable to perform the essential functions of the Business Manager position, and thus she was not entitled to intermittent or reduced schedule leave.[7] The FMLA does not require an employer to

_____

[7] Hatchett also argues that the College impermissibly forced her to take more leave than medically necessary, citing 29 C.F.R. § 825.203. We need not specifically address this assertion

allow an employee to stay in a position that the employee cannot perform. This type of claim is addressed under the ADA.

For similar reasons, Hatchett's FMLA retaliation claim fails. In order to establish the prima facie case for FMLA retaliation, the employee must demonstrate that FMLA leave was the determinative factor in the employment decision at issue. Beal v. Rubbermaid Commercial Products, Inc., 972 F.Supp. 1216, 1229 (S.D. Iowa 1997). Like the employee in Beal, Hatchett has not only failed to demonstrate she was entitled to FMLA leave, but she has failed to rebut the undisputed fact that she was unable to perform the job, and thus was terminated by the College. We have also reviewed the district court's denial of Hatchett's motion to alter or amend the judgment and find no error in that ruling.

### Conclusion

The undisputed evidence demonstrates that Hatchett was unable to perform the essential functions of the job of Business Manager and, therefore, she is not a qualified individual entitled to ADA protection. Hatchett has also failed to demonstrate entitlement to intermittent or reduced schedule leave. Accordingly, we affirm the district court's grant of summary judgment for the College and Titus and the denial of Hatchett's motion to alter or amend.

---

because we hold that Hatchett was not entitled to intermittent or reduced schedule leave.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT