# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3064

_____

| | |
|---|---|
| Dennis Epps, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the Eastern |
| | * District of Missouri. |
| The City of Pine Lawn, | * |
| | * |
| Appellee. | * |

_____

Submitted: June 13, 2003

Filed: December 19, 2003

_____

Before MELLOY, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Dennis Epps appeals the district court's[1] summary judgment in favor of the City of Pine Lawn, Missouri ("Pine Lawn"), in Epps's discrimination and workers' compensation claims. We affirm.

_____

[1] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

## I. *Background*

Epps served the City of Pine Lawn as a police officer for over thirteen years. Epps suffered numerous injuries during his employment. Epps filed workers' compensation claims for at least two of the injuries. Eventually, Epps's injuries left him unable to perform his job duties. Thereafter, Pine Lawn terminated him.[2]

Epps's first pertinent injury occurred August 1, 1998, when he was involved in an automobile accident while on duty. Epps injured his neck and back. Pine Lawn's workers' compensation insurance covered the injuries, and Epps received benefits. The injuries prevented Epps from performing his duties as a police officer, and he was placed on leave from August 26, 1998, to November 15, 1998. Dr. Peter Mirkin, Pine Lawn's designated workers' compensation physician, released Epps to return to work on November 9, 1998, without restrictions, but recommended that he work not as a patrolman but "as a detective."

Epps's next relevant injury occurred on April 13, 1999, when he aggravated the earlier injuries to his neck and back. However, Epps did not immediately seek medical attention. Instead, several months later, he visited Dr. Mirkin and complained of back and neck pain. He described that bending, stooping, or squatting aggravated the pain. Epps also complained that he had difficulty carrying his gun belt. According to the record, Epps paid for this visit and subsequent treatment with private health insurance.

Dr. Mirkin diagnosed Epps as having degenerative disk disease, and he concluded that Epps would very likely need to seek a different type of occupation. Initially, Dr. Mirkin prescribed conservative medical treatment, and he did not

---

[2] Epps served as a Pine Lawn police officer from March 14, 1987, to March 20, 2000. As a Pine Lawn police officer, Epps, who reached the rank of sergeant, performed standard police duties in the field and in an administrative capacity.

initially recommend surgery. However, in November 1999, Dr. Mirkin operated on Epps's neck. According to his reports, Dr. Mirkin did not consider Epps's complaints work-related, and consequently Pine Lawn's workers' compensation carrier denied liability for the treatment and surgery.

Donald Hardy became Chief of Police in July 1999. When he started work, he reviewed the personnel files of his officers and noticed that Epps "had filed quite a few workers' compensation claims, and that he missed a lot of work." He also reviewed Dr. Mirkin's note that Epps had degenerative disk disease, and that he would likely need to seek a different occupation. On September 29, 1999, Hardy wrote a memorandum to the Mayor and Board of Aldermen recommending Epps's termination. Hardy referred to Dr. Mirkin's note, the extensive amount of sick time used by Epps, and the number of workers' compensation claims Epps filed in concluding that Epps was unable to perform his duties. The Mayor and Board of Aldermen did not accept Hardy's recommendation, and Epps remained employed with Pine Lawn. Epps never returned to work after late September 1999.

After Epps's neck surgery in November 1999, Hardy prepared a second memorandum to the Mayor and Board of Alderman on March 17, 2000. In this memorandum, Hardy again recommended termination after noting that there were no light-duty assignments available, and that the department's officers were required as part of their full duties to bend, squat, and run. Hardy again referred to Dr. Mirkin's note before concluding that Epps would never be able to function as a regular officer. On March 21, 2000, the Mayor and Board of Aldermen voted to accept Hardy's recommendation to terminate Epps and then dismissed him. Epps appealed the termination under the Pine Lawn Municipal Code. Following a hearing, the Board denied the appeal.

On February 27, 2001, Epps sued Pine Lawn alleging four separate claims. Specifically, he claimed that his termination in May of 2000 violated the Americans

with Disabilities Act ("ADA") and the Missouri Human Rights Act ("MHRA"). He also claimed that the termination constituted unlawful retaliation under Missouri Revised Statutes §287.780 for filing a workers' compensation claim, and amounted to the intentional infliction of emotional distress under Missouri common law. Pine Lawn moved for summary judgment on all counts. In granting Pine Lawn's motion, the district court ruled that Epps could not prevail on his ADA and MHRA claims because he could not establish that Pine Lawn regarded him as disabled. The district court also held that Missouri's sovereign immunity statute barred Epps's workers' compensation retaliation and intentional infliction of emotional distress claims.

## II. *Standard of Review*

We review the district court's grant of summary judgment de novo. *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 706 (8th Cir. 2002); *Harder v. Acands*, 179 F.3d 609, 611 (8th Cir. 1999). In doing so, we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all inferences that may reasonably be drawn. *Wallace v. Dorsey Trailers Southeast, Inc.*, 849 F.2d 341, 342 (8th Cir. 1988). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. *Discussion*

Epps argues that the district court erred in finding that he did not establish a prima facie case of discrimination under the ADA and MHRA. Specifically, the court found that Epps failed to prove that Pine Lawn perceived him to be disabled.[3] In

---

[3] Epps's claims under the ADA and the MHRA are governed by the same standards. *Mathews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1164 n. 5 (8th Cir. 1998) (citing *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994) (federal employment discrimination decisions apply to MHRA)); Mo. Rev. St. § 213.055.

addition, Epps argues that the court erred in determining that Pine Lawn enjoys discretionary immunity, a more restrictive type of sovereign immunity recognized in Missouri, from Epps's retaliatory-discharge claim.

## A. *ADA and MHRA Claims*

Epps first argues that the facts showed that Pine Lawn perceived him to be disabled, thus establishing that particular element of his prima facie case under the ADA and MHRA. To establish a prima facie case of employment discrimination under the ADA and MHRA, we use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under this framework, Epps must show (1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003); *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1087 (8th Cir. 2001).

Within the meaning of the ADA, the term "disability" includes, among other things, "being regarded as having," 42 U.S.C. § 12102(2)(C) (1994), "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual. 42 U.S.C. § 12102(2)(A). Thus, individuals who are "regarded as" having a disability, but who are not actually disabled, can still fall within the protection of the ADA. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *Conant v. City of Hibbing*, 271 F.3d 782, 784–785 (8th Cir. 2001). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); accord, 45 C.F.R. § 84.3(j)(2)(ii) (regulation interpreting the Rehabilitation Act of 1973, 29 U.S.C. § 790).[4]

---

[4] The ADA does not define the term "major life activities," but there are two potential sources of guidance for interpreting that and other terms: the Rehabilitation

An individual is substantially limited in performing a major life activity where that individual is "[u]nable to perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which" he can perform a particular major life activity. *Id*. § 1630.2(j)(1)(i), (ii). A substantial limitation on the major life activity of working means that an individual must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Id*. § 1630.2(j)(3)(i). In "regarded as" actions, the plaintiff must show that the employer or potential employer "entertain[ed] misperceptions about the individual–it must [have] believe[d] either that one ha[d] a substantially limiting impairment that one [did] not have or that one ha[d] a substantially limiting impairment when, in fact, the impairment [was] not so limiting." *Conant*, 271 F.3d at 785 (quoting *Sutton*, 527 U.S. at 489).

Summary judgment is proper if a plaintiff fails to establish any element of his prima facie case. *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998). We hold that the district court properly granted summary judgment to Pine Lawn because Epps failed to establish that Pine Lawn perceived him to be disabled within the meaning of the ADA or MHRA. Pine Lawn concluded that Epps could not perform the particular job of a Pine Lawn police officer. This, however, is insufficient to establish an ADA or MHRA claim. "The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). "There is a distinction between being regarded as an individual unqualified for a particular job because of a limiting physical impairment

Act of 1973 and the Equal Employment Opportunity Commission ("EEOC") regulations interpreting the ADA. *Fenney*, 327 F.3d at 714 (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002)). While regulations interpreting the Rehabilitation Act of 1973 receive a high degree of deference, the level of deference accorded EEOC regulations is yet unknown. *Fenney*, 327 F.3d at 713–714 (citing *Toyota*, 534 U.S. at 194). However, neither party challenges the reasonableness of the EEOC regulations or their application to this case; therefore, we need not address this issue.

and being regarded as 'disabled' within the meaning of the ADA." *Conant*, 271 F.3d at 785. "Accordingly, an employer is free to decide that . . . some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." *Id.* (quoting *Sutton*, 527 U.S. at 490–91).

In this case, Hardy and the Board of Alderman relied on Dr. Mirkin's treatment notes that indicated that Epps should be given the job of a "detective" rather than that of patrolman and that Epps might be better suited for another type of job within the department. This medical evidence did not provide that Epps could not perform a broad range of work, nor does other evidence indicate that Hardy and the Board of Alderman concluded as much. Rather, the evidence only shows that Hardy and the Board of Alderman believed that Epps could no longer perform as a policeman for Pine Lawn based on the particular demands of a Pine Lawn patrolman.[5] We affirm the district court's summary judgment on Epps's ADA and MHRA claims.

---

[5] In addition, Epps failed to establish that he was qualified to perform the essential functions of the job, with or without accommodations. His excessive absenteeism from work rendered him unable to perform the job, and time off of work was not a reasonable accommodation in this instance. Attendance at work is a necessary job function. *Nesser,* 160 F.3d at 445. "An employee who is 'unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones.'" *Id.* (quoting *Moore v. Payless Shoe Source, Inc.*, 139 F.3d 1210, 1213 (8th Cir. 1998)). Even though attendance is an essential function of the job, the ADA requires employers to reasonably accommodate the disability, unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). The employee must show that a reasonable accommodation was available. *Nesser*, 160 F.3d at 446. Epps, however, failed to show that a reasonable accommodation existed. Epps asserts that the six-month leave of absence was reasonable; however, Pine Lawn, a small municipality, could not reallocate Epps's job duties among its small staff of fifteen to twenty-two police officers. An employer is not required to hire additional people or assign tasks to other employees to reallocate essential functions that an employee must perform. *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 675 (8th Cir. 2001).

## B. *Retaliatory Discharge and Sovereign Immunity*

Epps next argues that Pine Lawn unlawfully retaliated against him because he filed a workers' compensation claim. Epps's claim, however, is barred by the doctrine of sovereign immunity. Pine Lawn, as a municipality, is protected by discretionary immunity, a more restrictive type of sovereign immunity recognized in Missouri. *Jungerman v. City of Raytown*, 925 S.W.2d 202, 204 (Mo. 1996). Under Missouri's discretionary immunity doctrine, a city is not liable for the manner in which it performs discretionary duties, such as an official's "exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* at 205 (internal quotations omitted). The parties here agree that Pine Lawn generally enjoys this level of immunity.

Sovereign immunity has existed by statute in Missouri since 1977, with certain exceptions that the Missouri courts construe narrowly. *See* Mo. Rev. Stat. §§ 537.600, .610. Rather than argue that immunity does not apply, Epps contends that Pine Lawn waived its immunity by purchasing an insurance policy through the Missouri Public Entity Risk Management Fund (MOPERM), a statutory entity through which subscriber public entities are covered by insurance. *See* Mo. Rev. Stat. §§ 537.700, .745.1.

Despite the statutory language maintaining sovereign immunity for subscriber entities, sovereign immunity can still be waived in certain instances. Under section 537.600, sovereign immunity is waived in automobile cases and cases involving injury caused by a dangerous condition of public property. Additionally, section 537.610.1 provides that sovereign immunity can be waived by the purchase of insurance covering tort claims.[6] Section 537.610.1 provides an "independent basis for

---

[6] Missouri Revised Statute § 537.610.1 provides:

[E]ach political subdivision of this state . . . may purchase liability insurance for tort claims, made against the state or the political subdivision . . . . Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and

waiving sovereign immunity–a basis cemented in the existence of coverage for the damage or injury at issue under the language of the insurance policy." *Hummel v. St. Charles City R-3 School Dist.*, 2003 WL 21262853, \*2 (Mo. Ct. App. 2003) (quoting *State ex rel. Cass Med. Ctr v. Mason*, 796 S.W.2d 621, 624 (Mo. 1990)); *State ex rel. Bd. of Trs. of City of North Kansas City Mem. Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992). Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy. *Casey v. Chung*, 989 S.W.2d 592, 593 (Mo. Ct. App. 1998); *Fantasma v. Kansas City Board of Police Comm'rs*, 913 S.W.2d 388, 391 (Mo. Ct. App. 1996); *Fields v. Curators of the Univ. of Missouri*, 848 S.W.2d 589, 592 (Mo. Ct. App. 1993); *Russell*, 843 S.W.2d at 360; *Cass Med. Ctr.*, 796 S.W.2d at 623.

To penetrate a claim of immunity under section 537.610.1, a plaintiff is required to demonstrate the existence of insurance that covered the plaintiff's claim. *Brennan By and Through Brennan v. Curators of the Univ. of Missouri*, 942 S.W.2d 432, 436 (Mo. Ct. App. 1997). Because a public entity's liability for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity. *See Burke v. City of St. Louis*, 349 S.W.2d 930 (Mo. 1961); *see also, e.g., Martin v. City of Washington*, 848 S.W.2d 487, 490–91 (Mo. 1993) (discussing pleading requirements for dangerous condition exception in section 537.600).

Epps argues that the MOPERM policy contains language in the "Public Officials Errors and Omissions" clause that qualifies as a waiver of immunity. For support, Epps cites *Amick v. Pattonville-Bridgeton Terrace Fire Prot. Dist.*, 91 S.W.3d 603 (Mo. 2002). In *Amick*, the plaintiff sued the Fire Protection District for retaliatory discharge after the plaintiff filed a workers' compensation claim. The Missouri Supreme Court

---

only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state.

determined that the Fire Protection District's insurance policy waived sovereign immunity because a clause in the policy provided that the District would pay for amounts to which the insured "becomes legally obligated to pay as monetary damages because of a 'wrongful act' to which this insurance applies." *Id.* at 604. Epps argues that the "Public Officials Errors and Omission" definition in the MOPERM policy similarly waives immunity. This definition provides:

> Public Officials Errors and Omissions means any and all breaches of duty by the Covered Party arising from negligent action or inaction, mistake, misstatement, error, neglect, inadvertence, or omission by the Covered Party in the discharge of duties with the Member Agency.

Appendix at 348. After comparing the policy provision in *Amick* with the MOPERM provision, we disagree with Epps's assertion that the MOPERM policy provision waives Pine Lawn's sovereign immunity. The MOPERM "Public Officials Errors and Omissions" clause clearly speaks to inadvertent or accidental "errors" or "mistakes" rather than a deliberate act, such as retaliation, as was involved in *Amick.* The MOPERM policy here is more restrictive than the policy in *Amick,* and it does not contain the broad language from *Amick* relating to any "wrongful acts" committed by Pine Lawn. Rather, it specifically provides when and for what type of injury it will pay, and consistently maintains that it does not waive sovereign immunity beyond those areas specified by statute or for claims arising under workers' compensation or other disability laws.

Furthermore, the MOPERM policy specifically cites Missouri's sovereign-immunity statutes at §§ 537.600 and 537.610 that name the exceptions to sovereign immunity, including the purchase of insurance. The policy notes that liability will not be broadened beyond the limitations of those statutes. The policy also notes that MOPERM will not cover any obligation to which Pine Lawn "may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law." Appellant's App. at 344. The wrongful discharge statute under

which Epps makes his claim is in the Missouri Workers Compensation Act. As such, we find that Pine Lawn is protected by sovereign immunity.[7]

IV. *Conclusion*

Accordingly, for the foregoing reasons, we affirm the district court's summary judgment in favor of Pine Lawn on Epps's ADA, MHRA, and retaliatory-discharge claims.

_____

---

[7] Because we find that the doctrine of sovereign immunity disposes of this matter, we do not reach the merits of Epps's retaliatory-discharge claim.