# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3846

_____

James McPherson,      *
     *

        Plaintiff – Appellant,      *
     *     Appeal from the United States
    v.      *     District Court for the Western
     *     District of Missouri.

O'Reilly Automotive, Inc.,      *
     *

        Defendant – Appellee.      *

_____

Submitted: June 13, 2007
Filed: July 2, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

James McPherson injured his back in September 2001 while working for O'Reilly Automotive, Inc. (O'Reilly) and subsequently underwent extended treatment and surgery. O'Reilly first placed him on leave but eventually terminated his employment in 2002, informing him that it had no open job position for someone with his medical restrictions. McPherson then commenced this action, claiming violations of the Americans with Disabilities Act of 1990. The district court[1] granted summary judgment to O'Reilly, and McPherson appeals. We affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

I.

O'Reilly is an auto parts retailer and wholesaler headquartered in Springfield, Missouri. James McPherson began working for O'Reilly in 1986 in a sales position and was later promoted to assistant manager of a store and in 1990 to territory assistant sales manager (TSM). The TSM position required McPherson to sell products and provide services to wholesale customers at their places of business and to conduct sales seminars for other employees. McPherson's typical day involved driving from O'Reilly's regional office to one of the stores in the greater Kansas City metropolitan area, where he would work for the rest of the day. On some days he would spend half the day at one store and the other half at another. A TSM is also required to perform some lifting of car parts weighing no more than five to ten pounds.

On September 20, 2001, McPherson injured his back on the job. He filled out a workers compensation report the next day but sought no medical attention until November 13, when he was seen by an occupational medicine specialist at O'Reilly's behest. McPherson continued working and seeing this specialist through the end of 2001. O'Reilly placed McPherson on a medical leave of absence beginning January 14, 2002. McPherson received a series of epidural injections in February and March 2002, and his physician told him on February 8 that he was not to return to work until medically authorized to do so. On March 12 his physician referred McPherson to a surgeon and again advised him not to go back to work until medically released. He saw the surgeon on April 17 and decided to have back surgery because he understood it would enable a quicker recovery from his condition.

O'Reilly placed McPherson on workers compensation leave on April 8 and reassigned his sales territory to other managers. Then on April 21, it promoted another employee to McPherson's TSM position. The parties agree that these actions complied with the Family and Medical Leave Act of 1993. McPherson testified that

around this time, O'Reilly's regional sales manager Tom Bollinger told him that his job would be protected and that he could return to the same job after surgery and physical rehabilitation. McPherson further testified that he would not have undergone surgery if Bollinger had not made this representation.

McPherson's back surgery was performed on May 22, and he was not released to return to work in any capacity until July 22. After that date he would be able to return with significant physical restrictions. On September 27 a functional capacity evaluation was performed by an occupational therapist who concluded that McPherson could function in the Department of Labor's "heavy work" category. McPherson was given the following permanent work restrictions by his physician on October 8: no prolonged sitting or standing; no repetitive bending or stooping; and no lifting of more than 50 to 60 pounds occasionally. His physician also noted that McPherson appeared to be "appropriate for his prior job description."

After receiving the functional capacity evaluation and permanent work restrictions, O'Reilly offered McPherson a position at one of its stores as an installer service specialist (ISS). The ISS position requires a worker to stand 5 to 6 hours in an eight hour workday, to bend or stoop for 1 to 2 hours per day, and to lift and carry 51 to 75 pounds frequently. McPherson asked O'Reilly's regional manager, Buddy Ball, whether accommodations could be made to the job's physical duties. Ball answered that accommodations were possible, but no written agreement or memorandum was made on the topic.

McPherson's physician wrote a letter to O'Reilly on October 21, stating that he would not release McPherson to work as an ISS because of the job's physical demands. An administrative assistant at O'Reilly's regional office told McPherson that unless he was released to return to work without any limitations, there would be no job available for him. A benefits manager at O'Reilly, Shari Reaves, explained to McPherson that his TSM position had been filled and there were no available

positions matching the restrictions laid out in his doctor's October 21 letter. McPherson told regional manager Ball that Tom Bollinger had said he could return to the TSM position. Ball said that it was his responsibility to make such a decision rather than Bollinger's. When McPherson returned to Bollinger to ask him about that, Bollinger told him, "Buddy [Ball] overrode my decision."

On November 11, O'Reilly sent McPherson a letter terminating his employment. The letter stated that an ISS position could not be offered him since his physician had not released him for it, and that "[c]onsidering the information provided by your physician, we do not have a position open at this time for which you qualify." O'Reilly benefits manager Reaves filled out a document entitled "Termination Report" on November 26, checking a box labeled, "Disability – Permanent and cannot return to work" and adding the handwritten notation: "Exhausted FMLA / Permanent restrictions / w/c injury."

McPherson disputes O'Reilly's position that there were no vacancies at this time for positions he could perform. In his deposition he testified that there were vacancies for positions as store manager, that he had seen postings for vacancies in O'Reilly's warehouse, and that an EEOC employee, Terri Wilke, had told him there were vacancies for store manager, assistant store manager, machine shop manager, product buyer, and inventory control. McPherson said that he had the necessary experience for all these managerial positions. He points to no evidence that he ever expressed an interest to O'Reilly in any of these positions, however. In reporting on her conversation with McPherson in October 2002, benefits manager Reaves declared that "it seemed clear that he did not want to return in any capacity other than the TSM job."

McPherson began a search for new employment in 2003. The Missouri Department of Rehabilitation put him in touch with Jewish Vocational Services (JVS), in July 2003. McPherson's vocational counselor at JVS was Colleen Prewett. With

McPherson's authorization, Prewett called O'Reilly's offices in September 2003 to verify his employment information. She testified that when making such calls she would typically identify herself as a vocational counselor with JVS who was helping a client look for a new job, but she could not recall whether she specifically did so when calling O'Reilly. Because it was her first contact with O'Reilly, however, and she wanted to know what information it was sharing with McPherson's prospective employers, she "may not have been forthcoming" about her identity as McPherson's vocational counselor. Prewett testified that she spoke with a female in O'Reilly's human resources office. When she asked about McPherson's employment history with O'Reilly, the employee replied that he was "completely disabled" and that was the reason he had left his job. O'Reilly's policy regarding requests for references about former employees states that such information may be released "only with the team member's consent or to meet legal requirements."

During his search for employment, McPherson interviewed with Champion Chemicals in Clinton, Missouri. McPherson testified that the people there told him they liked his record, his performance, and "everything about him," but wanted to check his references. McPherson called Champion back several times over a two to three week period but was eventually told the position had gone to another applicant. McPherson also had numerous telephone interviews during his search, including one with Jiffy Lube. McPherson worked with JVS to try to find a job until November 2004, when he decided to discontinue the search and apply for social security disability benefits.

On July 5, 2003, McPherson filled out an EEOC intake questionnaire and filed his charge of discrimination on October 28, 2003.[2] The EEOC issued him a right to sue letter in 2005, and McPherson subsequently brought this action. He alleged that

_____

[2]O'Reilly argued to the district court that McPherson's claim was untimely. The district court concluded the claim was timely, and O'Reilly has not argued to the contrary on appeal.

O'Reilly violated the Americans with Disabilities Act of 1990 (ADA) in three ways: first, by terminating him instead of offering him vacant positions because it regarded him as disabled, 42 U.S.C. § 12112(a), second, by disclosing confidential medical information about him, id. § 12112(d)(3)-(4), and third, by retaliating against him for exercising his statutory rights. Id. § 12203(a). After discovery, O'Reilly successfully moved for summary judgment on all claims. The district court concluded that McPherson had not shown any genuine issue of material fact on whether O'Reilly regarded him as disabled and thus had not established a prima facie case of disability discrimination. It concluded proof was lacking that O'Reilly had disclosed confidential medical information about McPherson to prospective employers and that O'Reilly was entitled to summary judgment on the retaliation claim. McPherson timely appealed the claims relating to his termination and the disclosure of medical information; he has not appealed the dismissal of his retaliation claim.

II.

We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and making every reasonable inference in his favor. Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir. 2003). Summary judgment is appropriate if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. We may affirm the district court on any ground supported by the record. Hatchett v. Philander Smith Coll., 251 F.3d 670, 674 (8th Cir. 2001).

A prima facie case of disability discrimination under Title I of the ADA requires McPherson to show that (1) he has a disability within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. Conant v. City of Hibbing, 271 F.3d 782, 784 (8th Cir. 2001). McPherson contends that O'Reilly regarded him as disabled, thus bringing him

-6-

within the ADA's protected class, see 42 U.S.C. § 12102(2)(C), that he was qualified to perform the essential functions of the vacant positions, id. § 12111(8), and that by terminating him instead of offering him one of the vacant jobs, O'Reilly took adverse employment action against him. See id. § 12112(a)-(b). O'Reilly contends that McPherson has not made out a prima facie case of discrimination because it did not regard him as disabled or fail to offer him a vacant position for which he was qualified. The district court agreed that McPherson had failed to establish a prima facie case and granted summary judgment to O'Reilly on that ground.

McPherson does not argue that he was qualified to perform the essential functions of the ISS position or that O'Reilly was obligated under the ADA to restore him to his previous TSM position when it had already been filled. The action which he alleges to be discriminatory is O'Reilly's terminating him instead of offering him some other vacant position. In McPherson's view, O'Reilly did not offer him another position for which he was qualified because it regarded him as permanently disabled. He argues that the termination report filled out by an O'Reilly employee shows the company considered him to be permanently disabled. On McPherson's termination report form the box for "Disability – Permanent and cannot return to work" was checked and a handwritten note was added saying "Exhausted FMLA / Permanent Restrictions / w/c injury." McPherson adds that Colleen Prewett's conversation with an O'Reilly human resources employee is further evidence that the company believed he had a permanent disability. O'Reilly responds that McPherson's evidence was insufficient as a matter of law to show that it regarded him as having a disability.

McPherson asserts that O'Reilly had vacant positions for which he was qualified. To support this assertion, McPherson points to his deposition testimony. After stating that there were vacancies at O'Reilly, McPherson was asked what jobs he believed were available. He answered:

Well, I knew that there were store managers' vacancies open. I had seen posted jobs over at the office, as a matter of fact, for people at the warehouse and what have you.

McPherson has produced no evidence that he would have been able to perform the essential functions of whatever warehouse positions might have been available. Although McPherson asserted that he knew there were vacancies for store manager, he did not reveal the basis for his assertion. When he later stated that O'Reilly had vacancies for store manager, assistant store manager, machine shop manager, product buyer, and inventory control, he was asked about the source of his information. He said his source was Terri Wilke, who had worked on his case at the EEOC, but he has not addressed whether her comment would be admissible evidence. See Fed. R. Civ. P. 56(e). In his deposition McPherson claimed that he could perform the functions of store manager or assistant store manager, but he offered no evidence about the other vacancies mentioned by Wilke. Moreover, his counsel conceded at oral argument that he never applied for any of the positions he now claims were vacant. If McPherson had looked into whether these vacant positions actually existed or applied for them, he might have been able to show that such jobs were open but such evidence is not in the record.

The process of accommodation which the ADA envisions between employer and employee is interactive. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951 (8th Cir. 1999). By the time McPherson would have been able to perform the functions of his TSM spot again, the position had been filled. After it had been filled and McPherson had been released to return to work with physical restrictions, O'Reilly offered him the ISS position, but his physician indicated that he could not perform the essential functions of that position. When there are no vacant positions for which an individual with a disability qualifies, the ADA does not require an employer to retain the individual and create an entirely new position for him. See Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1019 (8th Cir. 2000). Because McPherson has not shown that there were vacant positions at O'Reilly

for which he was qualified, we conclude the district court did not err in granting summary judgment on his claim that O'Reilly terminated his employment instead of offering him a vacant position because it regarded him as disabled.

## III.

McPherson maintains that a reasonable jury could infer from the evidence that O'Reilly violated the ADA's prohibition on disclosure of confidential information by telling prospective employers that he was no longer employed by it because he was disabled. The evidence he cites consists of Colleen Prewett's testimony about what she was told in her call to the O'Reilly human resource office and his own unsuccessful efforts to obtain a new job despite the initial interest of employers. O'Reilly argues that the inferences urged by McPherson to support his claim that it disclosed confidential information are unreasonable and speculative.

The ADA prohibits an employer from disclosing confidential medical information about an ex-employee such as McPherson. See Cosette v. Minn. Power & Light, 188 F.3d 964 (8th Cir. 1999). To prevail, McPherson need not have a disability within the meaning of the ADA. See id. at 969. He must show, however, that the disclosed information was confidential and that he suffered some kind of tangible injury as a result of the disclosure. Id. at 970. McPherson relies on two pieces of evidence to argue that the district court erred in granting summary judgment on his disclosure claim. First, Colleen Prewett could not remember whether she identified herself when she called O'Reilly. Since she thought she "may not have been forthcoming" about her identity, McPherson argues that O'Reilly may have disclosed confidential information without knowing Prewett was his employment counselor. Second, despite his numerous interviews with prospective employers, particularly his favorable interview with Champion Chemicals, McPherson was unable to secure new employment. He believes his inability to obtain another job demonstrates that O'Reilly must have disclosed medical information to his prospective employers.

Although Prewett suspected she "may not have been forthcoming," she also admitted that it was her habit to identify herself when making such calls. Because McPherson bears the burden of proof on his claim, he is under an affirmative obligation to come forward with evidence in support of his claim, and Prewett's testimony does not satisfy this obligation. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It would be speculative to conclude from it that O'Reilly gave out confidential information to prospective employers and that this led to McPherson's inability to get a new job. Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006). As McPherson admitted in his deposition, there is no other evidence that O'Reilly gave out confidential information or that prospective employers relied on that information. We conclude that the district court did not err in granting O'Reilly summary judgment on the disclosure claim.

IV.

Accordingly, we affirm the judgment of the district court.

_____

-10-